Timothy SULLIVAN d/b/a Great Lakes Copy Supply Company, Plaintiff,

v.

SAVIN BUSINESS MACHINES CORPORATION, Defendant.

No. S 82–265.

United States District Court, N.D. Indiana, South Bend Division.

April 25, 1983.

Bruce P. Clark, James W. Roehrdanz, Galvin & Galvin, Hammond, Ind., for plaintiff.

James H. Pankow, South Bend, Ind., Stephen W. Terry, Jr., Robert K. Stanley, Baker & Daniels, Indianapolis, Ind., for defendant.

## MEMORANDUM AND ORDER

SHARP, Chief Judge.

This case arises out of an alleged breach of Indiana's franchising statutes, stemming from the defendant's termination of the plaintiff's local dealership. The defendant removed this action from state court pursuant to 28 U.S.C. § 1446, with jurisdiction predicated on diversity of citizenship under 28 U.S.C. § 1441(b) and § 1332. The matter is presently before this Court on a choice of law question, viz., whether Indiana or New York law applies.

The underlying facts in this case are not in dispute. The plaintiff, Timothy Sullivan, d/b/a Great Lakes Supply Corporation, is a national distributor of specialized office equipment, e.g., plain paper copiers and related products. On May 17, 1979 plaintiff and defendant entered into a written contract entitled Savin Corporation Dealer Agreement 700 Series Copiers. Under the terms of the agreement, the defendant appointed the plaintiff as a non-exclusive dealer of the defendant's "700 Series" copiers and related supplies in LaPorte and Starke Counties, Indiana.[1]

---

1. Prior to May 17, 1979, i.e., from June 21, 1976 until May 17, 1979, Great Lakes had acted as a dealer of Savin Products pursuant to written dealer agreements between the parties. Thus, the parties had actually dealt with each other over a period of nearly four years prior to the termination of June 6, 1980.

Paragraph 10(a) of this agreement allowed either party to terminate the contract at any time, without cause, so long as the other party is afforded thirty days' notice. Acting pursuant thereto, defendant notified plaintiff on June 6, 1980 of its intent to terminate the agreement. The agreement was later terminated.

On May 10, 1982 the plaintiff filed suit against the defendant in LaPorte Circuit Court (Indiana). As noted above, the defendant thereupon removed the action to this Court.

In his amended complaint, plaintiff alleges, *inter alia*, that defendant failed to comply with the specific provisions of the Indiana Franchises Statute, Ind.Code § 23–2–2.5–1 *et seq.* (Burns Ann.1982), and is therefore in violation of the Indiana Deceptive Franchise Practices Act, Ind.Code § 23–2–2.7–1 *et seq.* (Burns Ann.1982). Defendant argues that New York law, and not that of Indiana, governs this matter, and therefore the Indiana franchise statutes are inapposite. Defendant further maintains that, even if Indiana law were to apply, the arrangement existing between the parties from May 17, 1979 until June 6, 1980 was not a franchise; hence, the Indiana franchise statutes would still not apply.

On September 20, 1982 defendant filed a motion to dismiss. On December 28, 1982 hearing was held before this Court in this case, at which time the motion to dismiss was ordered converted to a motion for summary judgment. Because this case is presently scheduled for a second hearing on all pending motions for June 10, 1983 at 4:00 o'clock P.M., this Court will address itself solely to the questions of (1) whether the law of New York or Indiana applies, and (2) if Indiana law applies, whether the Indiana franchise statutes are involved.

Indiana has long adhered to the "most intimate contacts" test, also known as the "center of gravity," "grouping of contacts," or "most significant relationships" rule. *Suyemasa v. Myers,* Ind.App., 420 N.E.2d 1334, 1343 n. 3 (1981). First enunciated in *W.H. Barber Co. v. Hughes,* 223 Ind. 570, 63 N.E.2d 417 (1945), the Su-

preme Court of Indiana set forth the following approach to determine what law to apply in contract disputes:

> The court will consider all acts of the parties touching the transaction in relation to the several states involved and will apply as the law governing the transaction the law of that state with which the facts are in most intimate contact.

223 Ind. at 586, 63 N.E.2d at 423. This approach has since been elaborated in the Restatement, Second, Conflict of Laws, § 188. *Coldwell Banker & Co. v. Karlock,* 686 F.2d 596 (7th Cir.1982). See also, *Bowen v. United States,* 570 F.2d 1311, 1319 n. 18 (7th Cir.1978); *State Auto Mut. Ins. Co. v. Spray,* 547 F.2d 397, 400 (7th Cir.1977); *Norfolk & Western Ry. Co. v. Hartford Acc. & Indem. Co.,* 420 F.Supp. 92, 94 (N.D.Ind. 1976).

Notwithstanding the above, the "most intimate contacts" test can only come into play "[w]here ... the court is *not* satisfied that the parties have chosen the state law to be applied[.]" *Utopia Coach Corp. v. Weatherwax,* 177 Ind.App. 321, 379 N.E.2d 518, 522 (1978), (emphasis in original). This is in keeping with Indiana black letter law, that "[i]n the absence of exceptional circumstances showing a purpose to commit a fraud on the law, the true test for determining the proper law governing a contract is the intent of the parties." 6 I.L.E. Contracts § 2, n. 7 and cases cited thereat. *See also, generally,* P. Shuchman, "Confession of Judgment as a Conflicts of Law Problem," 36 Notre Dame Law 461, 468 (1961) (parties to a contract should have the right to select the law applicable to their contract).

In seeking to ascertain the intent of the parties, this Court must logically look to the contract itself. At paragraph seventeen of the document appears the following language: "Governing Law. This agreement shall be governed by and construed in accordance with the laws of the State of New York." Because of this paragraph, the language of Restatement, Second, Conflicts of Law § 187 is applicable:

(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

(a) the chosen state has no substantial relationship to the parties of the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

(3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.

An examination of the contract reveals that it is in a pre-printed format, i.e., what is commonly known as an "adhesion contract." Plaintiffs urge this Court to hold that the "take it or leave it" nature of this contract removes it from the realm of § 187 of the Restatement, Second, Conflicts of Law, and renders the "most intimate contacts" test applicable.

Various facts in this case take it outside the scope of *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) and its progeny. The record discloses that while the defendant is far larger than the plaintiff-company, the plaintiff-company is hardly a "mom and pop" corner grocery operation. Further, the fact that the parties had engaged in apparently mutually satisfactory business over a period of nearly four years prior to the termination of their dealings in June of 1980 hardly supports a position indicative of fraud on the part of the defendant. There are often valid reasons militating in favor of so-called "adhesion contracts," not the least of which is the desire for a uniform facilitation of the conduct of trade. Kronman and Posner, *The Economics of Contract Law* 80–81 (1979). There is nothing in the record to support plaintiff's contention that this Court should refuse to accept the intent of the parties regarding the choice of law as manifested in the contract. "The main underlying purpose [of the law of contracts is] the realization of reasonable expectations that have been induced by the making of a promise." 1 Corbin, Contracts 2 (1963), as quoted in Mermin, *Law and the Legal System* 29 (2d ed., 1982). Accordingly, it is the decision of this Court that the law of New York, and not that of Indiana, must control in this action. Because it is the conclusion of this Court that New York law governs this matter, this Court need not address the question whether the Indiana franchise statutes apply. All remaining issues will be addressed at the hearing now set for June 10, 1983, at 4:00 o'clock P.M. SO ORDERED.