**SOUTH BEND CONSUMERS CLUB, INC., Plaintiff,**

v.

**UNITED CONSUMERS CLUB, INC., United Consumers Club Franchising Corp., Defendants,**

v.

**Andrew SPITE, South Bend Consumers Club, Inc., Third Party Defendants.**

No. S 82–0383.

United States District Court,
N.D. Indiana,
South Bend Division.

Oct. 7, 1983.

Franklin A. Morse, II, David R. Melton, South Bend, Ind., for plaintiff.

Byron M. Chudom, Stephen H. Meyer, Jeffery J. Dywan, Jane L. Hillebrand, Schererville, Ind., for defendants.

## MEMORANDUM and ORDER

SHARP, Chief Judge.

This case arises out of an alleged violation of the Sherman Act, stemming from the termination of a franchise Agreement (Agreement) entered into between defendant United Consumers Club, Inc. and its wholly owned subsidiary United Consumers Club Franchising Corporation (hereinafter referred to collectively as "UCC") and plaintiff, South Bend Consumers Club (SBCC) in January 1974. Jurisdiction is predicated upon 15 U.S.C. § 4 and 28 U.S.C. § 1331. This matter is presently before the court on SBCC's motion for partial summary judgment. The issue to be addressed is whether the restrictive covenant not to compete, ancillary to the Agreement which

UCC seeks to enforce, is reasonable and enforceable under Indiana and/or Illinois law. For the reasons discussed below, this court finds the restrictive covenant unreasonable as written and, therefore, unenforceable as a matter of Indiana law. Accordingly, SBCC's motion for partial summary judgment is granted.

The underlying facts in this case are not in dispute. On January 30, 1974, SBCC's predecessor in interest, third party defendant, Andrew Spite, entered into a franchise agreement with UCC. Subsequently, Spite assigned the Agreement to Andrew Spite Associates, Inc., the name of such corporation later being changed to South Bend Consumers Club, Inc.

The Agreement provided that SBCC would have an exclusive franchise territory consisting of St. Joseph, Marshall and Fulton counties in Indiana and Niles township in Michigan. The Agreement contained a restrictive covenant in Section V, C, which read as follows:

> Upon the termination of this agreement for any cause, the franchise will not, for a period of two (2) years thereafter, directly or indirectly, enter the employment of, or render services to any person, partnership, association or corporation engaged in the same or substantially similar business covered by this agreement in any area which can be reasonably termed competitive to the franchisor or other franchisees; and during such term of two years, the franchisee will not within such territory engage in such business on his account or become interested therein, directly or indirectly, as an individual, partner, shareholder, director, officer, clerk, principal, agent, employee, trustee or in any relation or capacity whatsoever. Without limiting the generality of the foregoing, the minimum area of the competitive acts or other acts hereinbefore referred to shall be that area within twenty-five miles of the franchisee's territory or any place of business conducted by the franchisor or any other franchisee of the franchisor at the time of the termination of this Agreement.

Also of import to this action, Article VIII of the first Addendum to the Agreement, which apparently was executed at the time of the execution of the Agreement, provided that the Agreement and Addendum were to be governed and interpreted under Indiana law.

The parties continued to operate under the Agreement, modified from time to time by amending addenda, which primarily served to reflect increases in the cost of UCC memberships. A final addendum was executed on May 24, 1981, in Chicago, Illinois. As in previous instances, the Addendum dealt primarily with a provision increasing the cost of Club memberships. Its final paragraph provided:

> This entire agreement shall be governed by the laws of the State of Illinois. All of the terms of said Agreement as amended shall remain the same and continue in full force and effect.

The addendum was signed by Mr. Spite, representing SBCC, in Chicago and later signed by Mr. Wittlinger, President of UCC.

Subsequent to January 30, 1974, while operating as a franchise of UCC, SBCC established lines of supply through manufacturers and suppliers other than those having a relationship with UCC. Such action was an alleged violation of the Agreement. On or about May 6, 1982, UCC issued a 30-day notice prior to termination to SBCC. Negotiations were commenced in an attempt to resolve the dispute between UCC and SBCC; however, such negotiations proved fruitless and a final termination notice was issued by UCC on July 23, 1982.

SBCC commenced this antitrust action on August 10, 1982. The essence of SBCC's complaint is that the agreement constitutes a contract in restraint of trade in the form of a tying arrangement. UCC filed a counterclaim which seeks, *inter alia,* an injunction prohibiting SBCC from competing with it. On July 27, 1983, UCC filed a Motion for Partial Summary Judgment seeking injunctive relief in regard to the restrictive covenant. SBCC filed a Counter-Motion for Summary Judgment on August 19, 1983

arguing that the restrictive covenant, as written, is unreasonable and, thus, unenforceable. A hearing and oral argument on this well-briefed issue was held in South Bend, Indiana on September 9, 1983. At that time UCC withdrew, without prejudice, its Motion for Partial Summary Judgment.

## I.

A threshold consideration to be addressed by this court is the proper choice of law to be applied in this action. UCC argues that the entire Agreement is to be governed by Illinois law pursuant to an Addendum which purports to change the parties' previous choice of Indiana law. SBCC contends that the provision is not binding to the extent that the covenant, even if valid under Illinois law, should not be enforced if it would be invalid under Indiana law.

This court has recently set forth the procedures for determining the state whose law applies where a contract purportedly establishes a choice of law. *Sullivan v. Savin Business Machines Corp.,* 560 F.Supp. 938 (N.D.Ind.1983). In that case, this court adopted the language of RESTATEMENT (SECOND) of CONFLICT of LAWS § 187 (1971) which provides:

(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue was one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either, (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materi-

ally greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

The initial step of analysis in determining the proper law governing a contract under *Sullivan* is to ascertain the intent of the parties. To do this, the court must logically look to the face of the contract itself. *Sullivan, supra,* 560 F.Supp. at 939. Under the facts of this case, it appears that the law of Illinois should control since the Addendum to the Agreement of May 24, 1981 purports to change the initial choice of Indiana law. The first paragraph of the Addendum reads:

This entire agreement shall be governed by the laws of the State of Illinois. All of the terms of said Agreement as amended shall remain the same and continue in full force and effect.

However, SBCC contends that RESTATEMENT § 187(2)(b) would apply to this action. Under that subsection, the law of the state chosen by the parties would not be applied if the application of such law would be contrary to the public policy of the state having a materially greater interest in the transaction and the parties. Specifically, in this cause, SBCC argues that the law of Illinois would not be applied if the application of its law would be contrary to a fundamental policy of the State of Indiana and Indiana has the most significant relationship to the parties involved. Therefore, it is necessary to make a two-prong inquiry: 1) Does Indiana have a materially greater interest in the transaction and the parties; and 2) Is the enforcement of the restrictive covenant contrary to the public policy of the State of Indiana?

It is abundantly clear from the facts presented in this action that Indiana is the state that has the most significant contacts with the transaction and parties involved. Both UCC and SBCC are Indiana corporations. Andrew Spite is a citizen of Indiana. The franchise territory and the club were both located within Indiana. The original

Agreement specified that Indiana law was to be applied. In fact, the sole connection between SBCC and the state of Illinois was the Addendum signed by Andrew Spite in Chicago in 1981, seven years after the agreement was entered into.

Moreover, it is equally evident that the restrictive covenant at issue would not be enforced by a court in the State of Indiana. It is generally agreed that a state has an interest in regulating the extent to which it will allow parties to restrain trade through the use of restrictive covenants. *See Nordson Corp. v. Plasschaert,* 674 F.2d 1371 (11th Cir.1982); *Dothan Aviation Corp. v. Miller,* 620 F.2d 504 (5th Cir.1980). Indiana has articulated a public policy of regulating restraint of trade both through statutory law, e.g., IND.CODE ANN. § 24–1–1–1 *et seq.* (Burns 1982) [1] and case law. It is well established in Indiana that restrictive covenants are in restraint of trade and are not favored by the law. *Licocci v. Cardinal Associates, Inc.,* Ind., 445 N.E.2d 556, 561 (1983); *F.W. Means & Co. v. Carstens,* Ind.App., 428 N.E.2d 251, 261 (1982). They must be strictly construed against the covenantee, *Donahue v. Permacel Tape Corp.,* 234 Ind. 398, 127 N.E.2d 235, 237 (1955), and will be enforced only where reasonable. While reasonableness is an issue of law, *Seach v. Richards, Dieterle & Co.,* Ind.App., 439 N.E.2d 208, 212 (1982), it ultimately rests upon the facts and circumstances of the case. *Licocci v. Cardinal Associates, Inc., supra,* 445 N.E.2d at 561.

The Indiana Supreme Court has set out a three pronged test for determining the reasonableness of a restrictive covenant. A covenant will be deemed reasonable only where: (1) the restraint is reasonably necessary to protect the employer; (2) it is not unreasonably restrictive of the employee; and (3) it is not against public policy. *Donahue, supra,* 234 Ind. at 407–409, 127 N.E.2d at 239. Moreover, a determination of reasonableness must be dependent upon a consideration of duration, geographic area and the interest sought to be protected. *4408, Inc. v. Losure,* 175 Ind. App. 658, 373 N.E.2d 899 (1978).

This court is not cognizant of any Indiana cases applying this criteria in the context of franchise operations. In the absence of such authority, a restrictive covenant ancillary to a franchise agreement is generally treated by courts in the same manner as a restrictive covenant ancillary to a contract of employment. *Annot.,* 50 A.L.R.3rd 746, 748. That test of reasonableness for an anti-competitive covenant ancillary to an employment contract is somewhat more strict than the criterion necessary for enforcement of such covenants ancillary to the sale of a business. 50 A.L.R. at 749; *Seach v. Richards, Dieterle & Co., supra,* 439 N.E.2d at 212.

For purposes of this analysis, the court will assume that a protectible interest does exist in the franchise itself, *Armstrong v. Taco Time International,* 30 Wash.App. 538, 635 P.2d 1114 (1981); *McDonald's System, Inc. v. Sandy's Inc.,* 45 Ill.App.2d 57, 195 N.E.2d 22 (1963), and in other interests attendant to a franchising arrangement recognized under Indiana law such as customer contacts, *Unishops, Inc. v. May's Family Centers, Inc.,* Ind.App., 399 N.E.2d 760 (1980), and goodwill, *Donahue, supra.* These interests must be protected by a covenant reasonable in temporal scope. This court does not find a two-year period to be either unreasonable or arbitrary. It corresponds to the length of a membership in UCC's buying club, thus, presumably protecting UCC's clientele from being swayed by the lure of a competitor for the duration of their economic relationship with UCC. Moreover, there is ample case law pointing to the reasonableness of the time restraint. *See e.g., Welcome Wagon v. Haschert,* 125 Ind.App. 503, 127 N.E.2d 103 (1955) (5 years); *Seach, supra,* (3 years), *4408, Inc., supra,* (3 years).

---

1. IND.CODE ANN. § 24–1–1–1 *et seq.* (Burns 1982) includes chapters on contracts to prevent competition, combinations to restrain trade or prevent combination, combinations to prevent sale of supplies, combinations compelling manufacturers to close down, and motion picture fair competition.

At the same time, the covenant must be reasonable in terms of the spatial restraint it imposes. Again, relying on the analogy to the contract of employment, the extent of the spatial restraint upon the franchise must be limited to the area of the former franchisee's operations. *See, e.g., Donahue, supra,* 234 Ind. at 407–409, 127 N.E.2d at 239. According to the record presented in this case, UCC maintains franchises in fifteen states. SBCC cannot pose an unreasonable competitive danger in a fifteen state area much greater than the area in which it had formerly operated (three counties in Indiana, one township in Michigan) since SBCC would in no way injure the customer contacts or goodwill of UCC franchises already established in an area. Further, the record contains no evidence of any intent on the part of SBCC to undertake a program of expansion to challenge UCC statewide or nationwide.

Given this overbroad restriction, the following language in Section V, C does little to remedy the impact of the overall covenant:

> ... the minimum area of the competitive acts or other acts hereinbefore referred to shall be that area within twenty-five miles of the franchisee's territory *or* any other place of business conducted by the franchisor or any other franchise of the franchisor at the time of the termination of the agreement. (Emphasis added)

This language specified a minimum area which would be deemed competitive but does not specify a maximum area. Conceivably, a terminated franchisee could find himself engaged in more restrictions than originally anticipated if the franchisor expanded greatly over the period of the franchise agreement. It would be impossible for a terminated franchisee operating under this agreement to determine whether a course of action was or was not permissible in view of the language of this covenant.

The restrictive covenant at issue is in clear violation of public policy and contrary to the well established law of this state. Thus, though the covenant more than adequately protects the interests of the franchisor, the rights of the franchisee are too severely restricted. Since the preferred policy of this state is unalterably opposed to the enforcement of this covenant, in any degree or manner,[2] Restatement 187(2)(b) would apply and, consequently, this cause will be governed by Indiana law.

Additionally, UCC cites two courts as having recognized the reasonableness of a covenant similar to the covenant in this action. *Armstrong v. Taco Time International, Inc., supra,* and *Shakey's Incorporated v. Martin,* 91 Idaho 758, 430 P.2d 504. Only *Taco Time* is truly supportive of UCC's position since *Shakey's* can be readily distinguished on the fact that there was *no issue* as to the reasonableness in territory and time of the restrictive covenant in that case. *Shakey's, supra,* 91 Idaho at 761, 430 P.2d at 507. Other cases from foreign jurisdictions lend support to the outcome arrived at by this court today. *See, e.g., Budget Rent-A-Car Corp. v. Fein,* 342 F.2d 509 (5th Cir.1965); *Snelling & Snelling, Inc. v. Dupay Enterprises, Inc.,* 125 Ariz. 362, 609 P.2d 1062 (1980); *T.E. McCutcheon Enterprises, Inc. v. Snelling & Snelling,* Ga., 212 S.E.2d 319 (1974).

## II.

▮ In an attempt to circumvent the invalidity of the spatial restraint in this case, UCC urges this court to modify the covenant by means of the process of redaction or "blue penciling." *Welcome Wagon, Inc. v. Haschert, supra,* 125 Ind.App. at 507–509, 127 N.E.2d at 106, *Seach, supra,* 439 N.E.2d at 215. However, this process may be applied only when the covenant is clearly separated into parts with some parts being reasonable and others clearly not

2. At the hearing and oral argument held in South Bend, Indiana on September 9, 1983, counsel for both parties conceded that the outcome of this action would be the same under the application of either Indiana or Illinois law. Though the general rules in both states are similarly stated and there are no cases factually on all-fours with the case under discussion in either jurisdiction, it appears that as briefed and argued to this court, the cases found and cited by the parties indicate that Illinois is the more liberal in enforcing restrictive covenants.

meeting that standard. *Welcome Wagon, supra,* 125 Ind.App. at 507–509, 127 N.E.2d at 106; *Licocci, supra,* 445 N.E.2d at 561. Alternatively, if the covenant as written is not reasonable, the court may not create a reasonable restriction under the guise of interpretation since this would subject the parties to an agreement they had not made. *Donahue, supra,* 234 Ind. at 411–413, 127 N.E.2d at 241; *Licocci, supra,* 445 N.E.2d at 561.

The Supreme Court of Indiana's decision in *Licocci, supra,* is of critical import in this case in highlighting the subtle, but vital, distinction between the above stated principles of law. The *Licocci* covenant contained three separate and distinct promises which read as follows:

> ... the Representative does agree that for a period of sixty (60) days from and after the termination of this Contract the said Representative shall not engage in any business or activities, which directly or indirectly compete in anyway (sic) with the business and activities of the Corporation within the territory assigned to the Representative under this Contract; that the Representative will not for a period of sixty (60) days from and after the termination of this Contract by either party as hereinafter setforth (sic) call upon, talk with or solicit any business from any customers of the Corporation within or outside the territory of the Representative as hereinafter setforth (sic); and further that the Representative will not for a period of one year from and after the term of this contract by either party as hereinafter (sic) set forth, engage in, participate in, or in any way assist anyone else, directly or indirectly, selling to customers (sic) to whom said representative sold products during the time he was engaged as a Representative of Cardinal Associates Midwest, Inc. any product which is either identical to or essentially the same product as those products said Representative sold to that particular customer while he was representing Cardinal Associates Midwest, Inc. *Id.* 445 N.E.2d at 560–61.

The *Licocci* court was faced with the issue of whether all of the promises made in that covenant would be rendered unenforceable if any of the covenants were unenforceable. Licocci had argued that the covenant was not divisible, citing *Frederick v. Professional Building Maintenance Industries, Inc.,* 168 Ind.App. 647, 344 N.E.2d 299 (1976). But the Supreme Court differentiated between the *Frederick*-type, non-severable covenant and the *Licocci*-type, severable covenant. In *Frederick,* the covenant in question involved the counties of Lake, Porter, LaPorte and St. Joseph in Indiana, the counties of Will and Cook (excluding Chicago) in Illinois, and the counties of Berrien and Van Buren in Michigan. The *Frederick* court found the restraint as rewritten too broad and refused to give it validity by striking those counties from the covenant in which the employee had not had any activities. The court refused to single out specific counties from the spatial restraint because the modification of the single restriction was tantamount to rewriting the contract. In contract, the *Licocci* covenant was made up of three severable and independent restrictions, thus rendering that contract divisible.

■ Here, UCC seeks to modify the spatial restraint contained within one distinct restriction which constitutes the entire restrictive covenant. This would require the court to rewrite the covenant which, under Indiana law, it cannot do. Therefore, the entire covenant fails and no part of it may be enforced.

Accordingly, for the reasons set forth above, it is ordered that partial summary judgment in favor of the plaintiff, SBCC, be, and the same hereby is, GRANTED.