**Robert J. SHELDON and John M. Sheldon d/b/a World Bazaar of Southlake, Plaintiff,**

v.

**MUNFORD, INC., a Georgia Corporation and Lee Wards Creative Crafts, Inc., a Delaware Corporation, Defendants.**

**Civil No. H 86–865.**

United States District Court, N.D. Indiana, Hammond Division.

March 19, 1987.

Barry D. Rooth, Merrillville, Ind., for plaintiff.

Daniel W. Glavin and Karl K. Vanzo, Beckman, Kelly and Smith, Hammond, Ind., Marc Seidler and William Lockhart, Chicago, Ill., for defendants.

## ORDER

MOODY, District Judge.

This matter is before the court on a "Motion to Dismiss Indiana Statutory, Breach of Franchise Agreement, and Negligence Claims" filed by defendants Munford, Inc. ("Munford") and LeeWards Creative Crafts, Inc. ("LeeWards") on January 26, 1987. Plaintiffs Robert J. and John M. Sheldon (the "Sheldons") filed in opposition on February 13, 1987 and the defendants filed a reply on February 25, 1987.

## I.

### Background

This action arises out of a franchise agreement between the plaintiff Sheldons, citizens of Indiana, and the defendant Munford, a Georgia corporation, which granted the Sheldons an exclusive right to operate a World Bazaar retail store within an exclusive territory including the Southlake Mall in Lake County, Indiana. World Bazaar retail stores are engaged in the sale of imported, domestic and home-decorative gift items.

On or about July 26, 1985, Munford notified all of its World Bazaar franchisees that it had purchased LeeWards, a Delaware corporation. According to the Sheldons' complaint, LeeWards is a wholly owned subsidiary of Munford. Sheldons maintain that Munford, through its subsidiary LeeWards, unfairly competed with plaintiffs' South Lake Mall World Bazaar store by selling goods nearly identical to those sold by plaintiffs.

The Sheldons' complaint, which invokes this court's subject-matter jurisdiction on the basis of diversity of citizenship, 28 U.S.C. § 1332, alleges that: (1) Munford breached the agreement by allowing their wholly owned subsidiary corporation LeeWards to market and sell products substantially similar and identical to those sold at the Sheldons' store; (2) Munford breached a reconciliation agreement between the parties which forbade Munford from allowing LeeWards to sell competitive items; (3) Munford violated Ind.Code. 23–2–2.7–2(4) prohibiting a franchisor from competing with its franchisee; and (4) Munford was negligent in allowing LeeWards to compete with the Sheldons. The defendants filed a motion to dismiss the breach of franchise, statutory and negligence claims for failure

to state a claim upon which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6).

■ Dismissal of a claim for relief is proper under Fed.R.Civ.P. 12(b)(6) only where it appears beyond a doubt that the plaintiff can prove no set of facts which would support that claim. *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80, 84 (1957); *Ed Miniat, Inc. v. Globe Life Insurance Group, Inc.*, 805 F.2d 732, 735 (7th Cir.1986); *Papapetropoulous v. Milwaukee Transport Services*, 795 F.2d 591, 594 (7th Cir.1986); *Action Repair, Inc. v. American Broadcasting Co.*, 776 F.2d 143, 146 (7th Cir.1985). For purposes of a motion to dismiss, the pleadings are to be construed liberally. *Strauss v. City of Chicago*, 760 F.2d 765, 776 (7th Cir.1985). Furthermore, the court must accept as true all material allegations of the complaint, *Wilson v. Harris Trust & Sav. Bank*, 777 F.2d 1246, 1247 (7th Cir.1985); and construe the complaint in favor of the complaining party. *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343, 356 (1975); *Haroco, Inc. v. American National Bank and Trust Co.*, 747 F.2d 384, 385 (7th Cir.1984), *aff'd*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985); *Ricci v. Chicago Mercantile Exchange*, 447 F.2d 713, 715 (7th Cir.1971). Keeping this deferential standard in mind,[1] the court now turns to the three claims which form the basis of this Order.

## II.

### A. Contract Violation

Sheldons claim that Munford breached the franchise agreement's territorial exclusivity when it acquired the stock of the defendant LeeWards, because LeeWards owned a store in the same shopping center in which plaintiffs' World Bazaar store is located and the LeeWards store sold items substantially similar to those sold by plaintiffs. The franchise agreement between Munford and the Sheldons contains a provision which describes the import of the exclusive agreement as follows:

> The term "Exclusive" means that Munford shall not, during the term of this agreement, operate or grant a franchise to any other person to operate a WORLD BAZAAR business, or similar operation, within the territory. The term "WORLD BAZAAR" business refers exclusively to the business of selling at retail imported and domestic home decorative and gift items, and does not include any other business or commercial activity.

(Agreement ¶ 1.4). In another provision, the agreement defines the relevant territory as follows:

> This franchise shall be exclusive throughout (and only throughout) the following territory (hereinafter referred to as the "Territory"):
>
> Southlake Mall, Lake County, Indiana and all that area within a seven mile radius therefrom.

(Agreement at ¶ 1.3).

Munford seeks dismissal of plaintiffs' contractual claim on the ground that it is the independent corporation LeeWards, and not Munford, which operates the store in the Sheldons' exclusive territory. Munford argues that LeeWards is a separate and distinct legal entity, and although it is a wholly owned subsidiary of Munford, such a relationship does not render the conduct of LeeWards in the Southlake Mall area attributable to Munford. Munford's argument, put simply, is that the Sheldons cannot pierce its corporate veil in order to hold Munford responsible for the actions of LeeWards.

In response, the Sheldons argue that they need not pierce Munford's corporate veil; instead, they assert that the applica-

---

**1.** The issue of whether or not a federal court should dismiss a complaint for failure to state a claim upon which relief can be granted is, of course, a question of federal law. This is true even when, as here, a federal court sits in diversity, for dismissal is a procedural device and there is a federal rule of civil procedure directly applicable, namely Fed.R.Civ.P. 12(b)(6). A federal court must follow federal law in applying a federal procedural law. *Hanna v. Plumer*, 380 U.S. 460, 469–74, 85 S.Ct. 1136, 1142–45, 14 L.Ed.2d 8 (1965); *Accord International Administrators v. Life Ins. Co. of North America*, 753 F.2d 1373, 1378 (7th Cir.1985) (applying federal law in summary judgment action).

tion of common law rules of agency, in this parent/subsidiary corporation setting, is sufficient to hold Munford liable for Lee-Wards' actions.

### 1. Choice of Law

As a threshold matter, before addressing the substance of the parties' arguments, the court must first determine which state law to apply. Where, as here, subject-matter jurisdiction is based upon diversity of citizenship, a federal court must look for guidance, in resolving state legal issues, to the laws of the state within which it sits. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The law of the forum state includes the choice-of-law rules used to determine which state's substantive law applies. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Mucha v. King,* 792 F.2d 602, 604 (7th Cir.1986); *Casio, Inc. v. S.M. & R. Co., Inc.,* 755 F.2d 528, 531 (7th Cir.1985). Thus, this court must look in the first instance to Indiana law for guidance in determining which state's law governs the present contract claim.

Indiana has long adhered to the intimate-contacts test for its choice-of-law rule in contracts cases. This rule was first articulated in *W.H. Barber Co. v. Hughes,* 223 Ind. 570, 63 N.E.2d 417 (1945), wherein the state supreme court set forth the following standard to determine what law to apply in contract disputes:

> The court will consider all acts of the parties touching the transaction in relation to the several states involved and will apply as the law governing the transaction the law of that state with which the facts are in most intimate contact.

223 Ind. at 586, 63 N.E.2d at 423. *Coldwell Banker & Co.,* 686 F.2d 596, 600 (7th Cir.1982); *Sullivan v. Savin Business Machines Corp.,* 560 F.Supp. 938, 939 (N.D. Ind.1983).

This approach has since been elaborated in the *Restatement (Second) Conflict of Laws,* [hereinafter *"Restatement"*] § 188, which has been cited with approval in *Coldwell Banker & Co.,* 686 F.2d at 600; *Sulli-*

*van,* 560 F.Supp. at 939; and *Utopia Coach Corp. v. Weatherwax,* 177 Ind.App. 321, 325, 379 N.E.2d 518, 522 (1978). However, before applying the intimate-contacts test, the court must determine whether the parties to the present contract have already chosen which state's law is to apply. *Sullivan,* 560 F.Supp. at 939; *Utopia Coach,* 379 N.E.2d at 522. Indiana law holds that "[i]n the absence of exceptional circumstances showing a purpose to commit fraud on the law, the true test for determining the proper law governing a contract is the intent of the parties." 6 *I.L.E.* Contracts § 2 at 65 (1958 & Supp.1986) (and cases cited at n. 7).

In an effort to discern the intent of the parties, the court logically looks to the face of the contract itself. *Id.; South Bend Consumers Club v. United Consumers Club,* 572 F.Supp. 209, 212 (N.D.Ind.1983); *Sullivan,* 560 F.Supp. at 939. The franchise agreement between Munford and the Sheldons contains the following provision at paragraph 11.10:

> This agreement has been accepted by Munford at Atlanta, Georgia, and in order to effect uniform interpretation of all Munford Standard Franchise Agreements, it shall be governed and construed under and in accordance with the laws of the State of Georgia.

(Agreement at ¶ 11.10). This choice-of-law provision in the contract is a clear indication of the parties' intent—Georgia law is to govern.

When parties execute a choice-of-law provision in their contract Indiana courts will honor the parties' choice of law in an effort to give effect to their manifest intent in accordance with the analysis set out in the *Restatement* § 187. *South Bend,* 572 F.Supp. at 212; *Sullivan,* 560 F.Supp. at 939–40. Section 187 provides:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
>
> (2) The law of the state chosen by the parties to govern their contractual rights

and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

> (a) the chosen state has no substantial relationship to the parties of the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.
>
> (3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.

As subsection (1) of this provision states, the law chosen by the parties "will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement." The question of whether the parties could have resolved a particular issue by explicit agreement directed to that issue is a question to be determined by the local law of the state selected by application of the rule of § 188 of the *Restatement. Restatement,* Comment C at 563. In this case, the state indicated by application of § 188 is Indiana.[2]

▮ Indiana law does not prohibit parties to a franchise agreement from contracting exclusive territories or from stipulating that the franchisor cannot compete directly with the franchisee. In fact, the Indiana legislature has recently enacted a statute providing such protection to franchisees entitled "Deceptive Franchise Practices." Ind.Code § 23–2–2.7 *et seq.* (West Supp.1986). Section 2(4) of that statute prohibits any franchisor from:

[e]stablishing a franchisor-owned outlet engaged in a substantially identical business to that of the franchisee within the exclusive territory granted the franchisee by the franchise agreement, or, if no exclusive territory is designed, competing unfairly with the franchisee within a reasonable area. However, a franchisor shall not be considered to be competing when operating a business either temporarily for a reasonable period of time, or in a bona fide retail operation which is for sale to any qualified independent person at a fair and reasonable price, or in a bone fide relationship in which an independent person has made a significant investment subject to loss in the business operation and can reasonably expect to acquire full ownership of such business on reasonable terms and conditions.

Ind.Code § 23–2–2.7–2(4) (West Supp.1986).

The existence of this statutory provision clearly demonstrates that exclusive-territory and noncompetitive-franchisor contract provisions are permissible under Indiana law, thus, the relevant paragraph in the present contract concerns an issue which the Sheldons and Munford could have resolved (and in fact did) by an explicit provision in their agreement. This satisfies the requirement of § 187(1) of the *Restatement,* thus, the court finds that Georgia law will govern this particular issue in the contract.

### 2. Munford's Potential Liability for LeeWards' Actions

▮ Having determined that Georgia law shall govern the Sheldons' contract claim, the court turns to Munford's potential liability for LeeWards' actions. In briefing this issue the parties failed to comply with N.D.Ind.Rule 38 which states:

> If a party relies upon a legal decision not published in the Federal Supplement,

---

2. The rule of § 188 is Indiana's intimate-contacts test. *See Coldwell Banker,* 686 F.2d at 596; *Norfolk & Western Ry. Co. v. Hartford Acc. & Indem. Co.,* 420 F.Supp. 92, 94 (N.D.Ind.1976). In applying that test to the facts here, the court finds that Indiana is the state with the most contacts. It appears that negotiations and contracting occurred in Indiana and Georgia; the place of performance is clearly Indiana; the location of the subject matter of the contract is in Indiana as the franchisee store is in that state; and lastly, the residence of the parties is split between Indiana (Sheldons) and Georgia (Munford).

Federal Rules Decision, Federal Reporter, Federal Reporter 2d, Supreme Court Reporter, Bankruptcy Reporter, Northeast Reporter or Northeast Reporter 2d, then the party shall furnish the court with a copy of the relied-upon decision. Because the parties must necessarily rely upon Georgia law, and Georgia decisions are not published in the reporters listed in Rule 38, the parties must supply the court with copies of those cases. Therefore, the court will hold its ruling on this issue in abeyance until the parties have complied with N.D.Ind.Rule 38.

■ The Sheldons have also submitted the affidavit of Joan Sheldon and several exhibits along with their most recent filing. In so doing, the Sheldons seek to convert this motion to dismiss into a summary judgment motion. Federal Rule of Civil Procedure 12(b) states in part:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(b). As this portion of Rule 12 makes clear, the decision to convert a motion to dismiss into a motion for summary judgment is left to the court. In making such determination, the court has complete discretion and will consider whether the proffered, extra-pleading material and the actual conversion from the Rule 12(b)(6) to the Rule 56 procedure will likely facilitate the disposition of the action. *See Hill v. Trustees of Indiana University*, 537 F.2d 248, 251–52 (7th Cir.1976); 2A J. Moore, *Moore's Federal Practice* ¶ 12.09[3] at 12–77 (2d ed. 1986); 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1366 at 678–79 (1969 & Supp.1986).

■ Because the determination of whether Munford should be held liable for the actions of LeeWards will involve several factual questions, the court, in exercise of its discretion under Fed.R.Civ.P. 12(b), finds that the submission of extra-pleading materials (as outlined in Fed.R.Civ.P. 56) and the conversion from the Rule 12(b)(6) to the Rule 56 procedure will facilitate the disposition of this action. The parties are hereby given notice that the court will CONVERT Munford's motion to dismiss the Sheldons' contract claim into a motion for summary judgment. The parties will be given additional time to supplement their filings with extra-pleading materials according to the schedule set out in the conclusion of this Order.

## B.

### Indiana Statutory Claim

■ The Sheldons also allege that Munford violated Indiana's Deceptive Franchise Practices Act, Ind.Code § 23–2–2.7–2(4), which, as pointed out in the preceding discussion, provides certain protections to Indiana franchisees. Those protections include the designation of an exclusive territory and a proscription against a franchisor competing with an Indiana franchisee in that territory. *Id.* Munford seeks dismissal of this claim on the ground that the parties' choice of Georgia law to govern the contract renders Indiana law inapplicable. The Sheldons counter by acknowledging that Georgia law governs most provisions of the contract but, in this instance, application of Georgia law would thwart Indiana public policy as enacted by the statute.

Again, applying Indiana's choice-of-law analysis, the court finds that because the parties selected Georgia law to govern their agreement § 187 of the *Restatement* is implicated. And, because the instant protections for franchisees are issues about which the parties could have addressed explicitly in their agreement, the chosen law of Georgia shall apply. *Restatement* § 187(1). This conclusion renders Indiana's Deceptive Franchise Practices Act inapplicable in this particular case.

The Sheldons argue that this result will frustrate the established public policy in Indiana of protecting that state's franchisees and therefore, according to § 187(2)

of the *Restatement,* effect should be given to Indiana law on that point despite the parties' choice of Georgia law. The court agrees that in certain situations effect should be given to a particular state's law other than the law of the state the parties selected in a choice-of-law clause of their contract. Section 187(2) covers those situations and provides that, even if the particular issue in a contract is one the parties could not have resolved by an explicit provision, the law chosen by the parties will govern, unless either: (a) the chosen law has no substantial relationship to the parties or the transaction; or (b) the application of the chosen law would be contrary to a fundamental policy of the state which has a materially greater interest in the matter than the chosen state. *Restatement* § 187(2).

■ The first step in this analysis is to determine if the contested issue is one which the parties could have resolved by an explicit provision in their agreement. If it is, § 187(1) provides that the chosen law governs; if it is not, § 187(2) holds that the chosen law will still be applied except in two limited situations. Thus, in order to reach either of the limited exceptions the contested issue must be one which the parties could *not* have dealt with in their contract. In the case at bar, the contested provision of the contract involves the grant of an exclusive territory to the franchisee and an anticompetitive provision against the franchisor. Because Indiana law [3] actually legislates those things, it is clear that the parties could have (and in fact did) include such a provision in their contract. Accordingly, there is no need to reach the public policy exception presented by the Sheldons.[4]

---

3. The court looks to Indiana law because Indiana is the state with the most contacts as set forth in *Restatement* § 188. See *Restatement,* Comment C at 563 and footnote 2, *supra.*

4. Even if the court engaged in the public policy analysis there would be no need to apply Indiana law here. A comparison between the Indiana statute and the actual provision of the parties' agreement does not reveal any real conflict. In fact, the contract provision actually

## C.

### *Negligence*

■ Finally, the Sheldons allege that Munford was negligent in allowing Lee-Wards to compete with them. Munford seeks to have this negligence claim dismissed on the grounds that it owed no duty to the Sheldons to control LeeWards and that the Sheldons failed to allege a tort injury necessary for a negligence claim. The Sheldons maintain that an actionable duty, for negligence purposes, may arise contractually and that a claim for economic losses is sufficient to support a tort action.

In Indiana, "[a] duty of care, the breach of which will support a negligence action, may arise contractually." *Plan-Tec, Inc. v. Wiggins,* 443 N.E.2d 1212, 1218 (Ind.App. 1983) (citing *Perry v. NIPSCO,* 433 N.E.2d 44, 47–48 (Ind.App.1982)), *trans denied; Cummings v. Hoosier Marine Properties, Inc.,* 173 Ind.App. 372, 363 N.E.2d 1266, 1273 (1977), *trans. denied; Jones v. Indianapolis Power & Light Co.,* 158 Ind.App. 676, 304 N.E.2d 337, 346 (1973), *trans. denied.* The extent of the duty owed is a matter of contractual interpretation. *Plan-Tec,* 443 N.E.2d at 1218. In addition to a potential contract duty, "[a] duty of care may also arise where one party assumes such a duty, either gratuitously or voluntarily." *Id.* at 1219; *see also Ember v. B.F.D., Inc.,* 490 N.E.2d 764, 769 (Ind. App.1986).

Given the deferential standard for a Fed. R.Civ.P. 12(b)(6) dismissal, the court holds that Munford has not demonstrated, and the court is unwilling to find, that it appears beyond doubt that the Sheldons can prove no set of facts to support their claim. Because Indiana recognizes a contract-based duty of care, it is possible, given the allegations in plaintiffs' complaint, for the

---

parallels the Indiana law, consequently, giving effect to the contract in no way upsets Indiana policy. However, if it is later determined that the contract provision provides less protection to the Sheldons than the Indiana law, the contract will be modified to comply with the Indiana statute. Clearly, contracting to provide less protection is something the parties could not do under Indiana law.

Sheldons to prove the facts necessary for an actionable duty of care in this case.

Likewise, the court also finds that economic losses are recoverable in a negligence action under Indiana law. *Babson Bros. Co. v. Tipstar Corp.*, 446 N.E.2d 11, 15 (Ind.App.1983); *Indiana Bell Co., Inc. v. O'Bryan*, 408 N.E.2d 178, 184 (Ind.App. 1980). Therefore, Munford's motion to dismiss the Sheldons' negligence claim at this early stage is denied.

## III.

### CONCLUSION

It is therefore ORDERED that Munford's Motion to Dismiss is DENIED in part and GRANTED in part as follows:

1. The court will hold its ruling on the contract claim in ABEYANCE until the parties comply with N.D.Ind.Rule· 38. The parties are hereby NOTIFIED that the Court intends to CONVERT Munford's motion to dismiss the Sheldons' contract claim into a motion for summary judgment. In that regard, Munford will have 20 days from reciept of this order to submit any extra-pleading materials and additional memoranda on Georgia law; the Sheldons will then have 15 days in which to respond with similar filings; and Munford will have 10 days to reply;

2. Munford's motion to dismiss the Sheldons' Indiana statutory claim is hereby GRANTED and that claim is hereby DISMISSED; and

3. Munford's motion to dismiss the Sheldon's negligence claim is hereby DENIED.