AUSTIN POWDER
COMPANY, Plaintiff,

v.

Todd WALLWORK, James Rutz, Warex
Corporation, Defendants.

No. EV 89–87–C.

United States District Court,
S.D. Indiana,
Evansville Division.

Feb. 1, 1990.

Danny E. Glass, Fine & Hatfield, Evansville, Ind., for plaintiff.

Fred S. White, Bamberger, Foreman, Oswald & Hahn, Evansville, Ind., for defendants.

BROOKS, Chief Judge.

## I. INTRODUCTION TO CASE

Plaintiff initiated this cause of action by filing a Complaint for Preliminary and Permanent Injunction and Damages on June 6, 1989. On the same day the plaintiff filed a Motion requesting a Temporary Restraining Order. Jurisdiction exists under 28 U.S.C. § 1332, diversity of citizenship.

In its Complaint the plaintiff, an Ohio Corporation, claimed that defendants, Todd Wallwork (Wallwork) and James Rutz (Rutz), both residents of Indiana and previous employees of defendant, violated no-compete clauses contained in employment contracts they entered into with the plaintiff. In addition, plaintiff alleged trade secret violation, tortious interference with contract and business relations and unfair competition.

On July 11, 1989 the Court received a stipulation from the parties whereby the defendants agreed not to compete with the plaintiff pending a hearing and decision of this Court concerning the plaintiff's request for a permanent injunction. The par-

ties submitted this agreement only for the purpose of expediting this matter by avoiding a hearing on the plaintiff's Motion for Temporary Restraining Order. As such, this Court conducted a trial on the request for an injunction on August 31, 1989 and September 1, 1989. The plaintiff has also stipulated that it is not seeking damages—only injunctive relief. Subsequent to the trial both parties submitted post-trial briefs. The Court makes the following Findings of Fact and Conclusions of Law:

## II.  FACTS

The plaintiff, Austin Powder Company (Austin), is an Ohio Corporation which is in the business of manufacturing and selling explosives. That for organizational purposes Austin divides its total sales area into fourteen (14) geographical regions. The Evansville, Indiana area constitutes part of the West Central Region and Austin has been conducting business in this area for approximately forty (40) years. The West Central Region is further divided into three (3) districts: Northern Indiana, Southern Indiana and Western Kentucky.

Defendant, Wallwork, began working for Austin after he completed college in 1982. He had no prior experience in the explosives business. Austin trained Wallwork in the sales, manufacturing and transportation of explosives. In December, 1985 Austin transferred Wallwork to Evansville where he was to work in a sales position. In that position Wallwork was responsible for maintaining previously established customer relationships; expanding Austin's base of customers; expanding lines with established customers; field service work; and general customer satisfaction. Both parties agree that personal contact is vital to the sales of explosives. As such, Wallwork was provided a generous expense account which he used to court clients. In addition, Wallwork visited most of his clients on a regular basis not only to sell products, but to assist those clients in any manner possible. Of the top ten customers in the district, which make up over ninety percent of the Southern District's sales, Wallwork called on them all. Further, this Region is important to Austin, as seven to nine percent of its total domestic sales occur here.

On August 19, 1982 Wallwork and Austin entered into an employment contract which contained a no-compete clause. That clause reads:

E.  FOR a period of two years after termination of my employment with AP by my own volition:

a.  If I have been or am employed, in whole or in part, by AP in a sales capacity, I will not render services, directly or indirectly, to any CONFLICTING ORGANIZATION in connection with the sale, merchandising or promotion of CONFLICTING PRODUCTS to any customer of AP upon whom I called, or whose account I supervised on behalf of AP, at any time during the last two years of my employment by AP.

b.  If I have been or am employed, in whole or in part, by AP in a non-sales capacity, I will not render services directly or indirectly, to any CONFLICTING ORGANIZATION, except that I may accept employment with a CONFLICTING ORGANIZATION whose business is diversified, and which as to part of its business is not a CONFLICTING ORGANIZATION, provided AP, prior to my accepting such employment, shall receive separate written assurances satisfactory to AP from such CONFLICTING ORGANIZATIONS and from me, that I will not render services directly or indirectly in connection with any CONFLICTING PRODUCT.

That Agreement also contained a provision restricting Wallwork from disclosing confidential information. That provision reads:

B.  EXCEPT as required in my duties to AP, I will never use or disclose any CONFIDENTIAL INFORMATION.

Subsequently, on December 21, 1988, Wallwork and Austin entered into another contract, which is identical to the August 19, 1982 agreement, except that the following language was added:

As a condition and in consideration of the following consideration, I have re-read the Employee Agreement, understand its terms and conditions, and agree to comply with the Employee Agreement.

CONSIDERATION—Annual pay increase to $34,000/yr effective 12/15/88 and all increases in compensation, bonuses, benefits and promotions after the date of this addendum.

\*    \*    \*    \*    \*    \*

This Agreement in effect so long as Todd Wallwork receives annual compensation of at least $34,000 during his employment.

Wallwork testified that there was no discussion of the no-compete clause and he didn't know the effect of the clause when he entered into the contract. In addition, he alleges that his promised raise was "illusory" and that Michael Gleason (an officer of plaintiff corporation) fraudulently induced Wallwork into signing the 1988 contract. The Court does not agree. Michael Gleason testified that he discussed the no-compete clause with Wallwork during their December meetings. Further, Gleason testified that Wallwork did not want to sign the agreement unless he was assured an increase in pay, hence the consideration paragraph was included in the agreement, as well as the handwritten provision, which reads "this Agreement in effect so long as Todd Wallwork receives annual compensation of at least $34,000 during his employment."

■ The Court finds that no fraudulent statements were used to convince Wallwork to enter into the agreement. Further, it is unlikely that he did not understand the provision, as the language is clear and he and Gleason discussed, at least briefly, its meaning. Even if they had not, Wallwork would be bound by it, as one cannot sign a contract and later claim ignorance in regards to its provisions in the absence of overreaching or another defense. That is not the case sub judice. Hence, the sales provision of the no-compete clause applies to defendant Wallwork.

■ Defendant Rutz began working in the explosives industry in 1974. He worked for numerous explosives companies before beginning with Austin in October, 1987. His title with Austin was Regional Technical Representative. It is undisputed that Rutz was responsible for non-sales duties. The parties disagree as to whether Rutz can also be characterized a sales personnel. This is important, as Rutz and Austin entered into an employment contract on September 1, 1988 which contained a no-compete provision similar to the provision contained in the Wallwork–Austin contract. The no-compete provision contained in the Rutz–Austin agreement reads:

3. *Non–Competition.*

(a) So long as Employee is employed by Austin Powder, Employee shall not, directly or indirectly, own, manage, invest in, be employed by, participate in any other way, or enter into any agreement or understanding (oral or written) to own, manage, invest in, be employed by, or participate in any other way, in any business, directly or indirectly, in competition with any business of Austin Powder.

(b) So long as Employee is employed by Austin Powder, and for a period of two (2) years thereafter, Employee shall not, except as an employee, agent or representative of Austin Powder, directly or indirectly, do any of the following: (i) if the Employee has been or is employed, in whole or in part, by Austin Powder in a sales capacity, render services, directly or indirectly, to any Conflicting Organization in connection with the sale, merchandising or promotion of Conflicting Products to any customer of Austin Powder upon whom he called, any time during the last two years of his employment by Austin Powder; (ii) if the Employee has been or is employed, in whole or in part, by Austin Powder in a non-sales capacity, render services directly or indirectly, to any Conflicting Organization, except that after he is no longer an employee of Austin Powder he may accept employment with a Conflicting Organization whose business is diversified, and which as to part of its business is not a Conflicting Organization, provided Aus-

tin Powder, prior to his accepting such employment, shall receive separate written assurances satisfactory to Austin Powder from such Conflicting Organizations and from the Employee, that he will not render services directly or indirectly in connection with any Conflicting Product until after the second anniversary of the termination of his employment by Austin Powder; or (iii) solicit or otherwise seek to induce any employee, agent or representative of Austin Powder to terminate such person's position as an employee, agent or representative of Austin Powder.

Mechtenberg testified that Rutz was not only responsible for technical duties, but also responsible for building personal relationships with customers; responding to customer inquiries concerning pricing and sales information; assisting sales personnel when possible; and making contacts with potential customers when possible. On the other hand, Gleason testified that Regional Technical Representatives worked directly with customers curing technical problems and introducing products to customers. Rutz testified that he never made sales or quotes while with Austin. Bobby Chiles testified that while he worked as Regional Technical Representative in Tennessee he never engaged in sales or making quotes. Donald True (Vice President and General Manager of Austin) testified that he promoted the Technical Representative position as an all-service position in an effort to increase sales. Plaintiff's Exhibit No. 25 is an advertisement which depicts ten hard hats each with a different service that the technical representative was represented as being qualified to provide customers. Those services are technical sales specialist; product manager; blast designer; product demonstrator; blasting instructor; research/development adviser; on-the-job serviceman; trouble shooter; cost controller; and safety engineer. Of these, only one directly involves sales and even then only as to technical issues. The plaintiff asserts that all of its employees work as a team to sell its products, and as such, that all employees are involved in sales. Yet this is true of every business. Sales are not only dependent upon the quality of a business's sales staff, but upon the quality of the service which that business provides. Every employee affects the sales of its company in some manner, but not all employees are involved in sales. The evidence shows that nearly all of Austin's employees had customer contact as part of their duties. Plaintiff contends that since Rutz was encouraged to find potential new customers that he was a sales employee. The Court disagrees. The Court is not convinced that he solicited sales or was responsible for bringing Austin new clients. While it is true that he had pricing and cost information and may have provided that information to clients at times, this does not justify characterizing him as sales personnel.

Additionally, the Court notes that the Rutz–Austin employment contract contained a nondisclosure of confidential information clause, as did the Wallwork–Austin contract.

On May 24, 1989 Wallwork resigned his position with Austin and on May 29, 1989 Rutz also resigned. Prior to their resignations, the two incorporated Warex, an explosives sales company, on May 10, 1989.

## III. COVENANT NOT TO COMPETE

■ Both contracts at issue contain a provision requiring the application of Ohio law. In a case similar to the instant case, *Barnes Group, Inc. v. O'Brien*, 591 F.Supp. 454 (N.D.Ind.1984), an Ohio choice of law provision applying a covenant not to compete was examined and determined enforceable. Judge Sharp held that foreign law may be applied, as called for in a contract, provided that the foreign law does not violate Indiana public policy.

■ The initial inquiry with respect to the restrictive covenant is the choice of law to govern the action. As a federal court sitting in Indiana, this Court is bound to look to the law of Indiana for choice of law. *Klaxon Co. v. Stentor Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Coldwell Banker & Co. v. Karlock*, 686 F.2d 596, 600 (7th Cir.1982). Indiana choice of law principles dictate

that residents may contract concerning the applicability of foreign law to their agreement. Thus, "in keeping with Indiana black letter law, ... the true test for determining the proper law governing a contract is the intent of the parties." *Sullivan v. Savin Business Machines Corp.*, 560 F.Supp. 938, 939 (N.D. Ind.1983) citing 6 I.L.E. Contracts § 2, n. 7 and cases cited thereat. The Bowman sales agreement provides that it is to be governed by the law of Ohio. This court is obligated to accept the intent of the parties unless the public policy interests of this state outweigh those of the state chosen by the parties involved. *South Bend Consumers Club, Inc. v. United Consumers Club, Inc.*, 572 F.Supp. 209, 212 (N.D.Ind.1983); RESTATEMENT (SECOND) of CONFLICT of LAWS § 187 (1971). *See also Moll v. South Central Solar Systems, Inc.*, Ind.App., 419 N.E.2d 154, 162 (1981). Therefore, it is incumbent upon the Court to examine the reasonableness of the Bowman covenant under both the law of Indiana and the law of Ohio.

As such, it is necessary for this Court to examine both Indiana and Ohio law in regards to the covenants not to compete.

■■ Ohio courts have long recognized the need for restrictive covenants and have upheld them as a means for protecting the interests of an employer, particularly where, as here, the "business is built upon the confidence of its customers and the employee gains acquaintances and sells the customers by using the goodwill of the employer." *Briggs v. Butler*, 140 Ohio St. 499, 504, 45 N.E.2d 757, 762 (1942). Ohio law establishes two requirements for the enforcement of a restrictive covenant: (1) that it be ancillary to an employment agreement, and (2) that it be reasonable. *Id.* 45 N.E.2d at 762. The reasonableness requirement is further defined by law. A restraint must be reasonable in three respects: (1) duration of time and scope; (2) necessary for the protection of the plaintiff; and (3) not unreasonably restrictive upon the rights of the employee. *Id.*

■ Standards for the enforcement of a restrictive covenant in Indiana are similar, if not identical. Although restrictive covenants in restraint of trade are not favored by the law, *Licocci v. Cardinal Associates, Inc.*, Ind., 445 N.E.2d 556, 561 (1983), they will be enforced where reasonable. *Donahue v. Permacel Tape Corporation*, 234 Ind. 398, 127 N.E.2d 235, 237 (1955). A covenant will be deemed reasonable where (1) the restraint is reasonably necessary to protect the employer: (2) it is not unreasonably restrictive of an employee; and, (3) it is not against public policy. *Donahue*, 234 Ind. at 402, 127 N.E.2d at 239. Reasonableness is further determined by a consideration of duration, geographic area and interest sought to be protected. *4408, Inc. v. Losure*, 175 Ind.App. 658, 373 N.E.2d 899, 901 (1978).

■ Indiana courts have upheld specific time restrictions of two or more years. *See Leatherman v. Management Advisors, Inc.*, Ind., 448 N.E.2d 1048 (1983) (3 years); *Seach v. Richards, Dieterle & Co.*, Ind.App., 439 N.E.2d 208 (1982) (3 years); *Welcome Wagon v. Haschert*, 125 Ind.App. 503, 127 N.E.2d 103 (1955) (5 years). The courts have also held as reasonable sales territory restrictions, *Grand Union Tea Co. v. Walker*, 208 Ind. 245, 195 N.E. 277, 279–80 (1935); *4408 Inc.*, 175 Ind.App. at 661, 373 N.E.2d at 902, and more narrowly drawn restrictions referring to customers only. *Id.* at 459–460.

In *Raimonde v. Van Vlerah*, 42 Ohio St.2d, 325 N.E.2d 544 (1975), the Supreme Court of Ohio noted that factors which are to be considered when determining reasonableness are:

... whether the employee represents the sole contact with the customer; whether the employee is possessed with confidential information or trade secrets; whether the covenant seeks to eliminate competition which would be unfair to the employer or merely seeks to eliminate ordinary competition; whether the covenant seeks to stifle the inherent skill and experience of the employee; whether the benefit to the employer is disproportional

to the detriment to the employee; whether the covenant operates as a bar to the employee's sole means of support; whether the employee's talent which the employer seeks to suppress was actually developed during the period of employment; and whether the forbidden employment is merely incidental to the main employment. [Cite omitted].

*Id.* 325 N.E.2d at 547.

Clearly, Austin's "business is built upon the confidence of its customers and the employee gains acquaintances and sells the customers by using the goodwill of the employer", as described in *Briggs.*

■ When examining Wallwork's no-compete provision, which was part of the employment contract, it is reasonable in duration. Ohio and Indiana courts have held that two years is not an unreasonable length of time for a covenant not to compete. Further, evidence at trial showed that it takes as long as two years for sales representatives to gain the confidence of and build the necessary relationships with customers in the explosives industry. As such, the provision is necessary for the protection of the plaintiff. The scope of the covenant is reasonable; it applies only to customers of Austin that Wallwork called on or whose account he supervised during the last two years he was employed by the plaintiff. Examining the factors set out in *Raimonde*, the Court notes the following facts: Although Wallwork wasn't the sole contact with Austin's customers, he was responsible for nearly all sales in his district; that he had established many personal relationships with Austin's customers; he had no prior experience in the explosives industry and Austin is responsible for his training and experience; he possessed information that other employees were not privy to; other opportunities exist for Wallwork to pursue in this field; and the covenant seeks to restrict employment which is identical in nature to his employment with Austin. Finally, the covenant is consistent with Indiana law, and as such, is enforceable. Accordingly, Todd Wallwork is hereby ENJOINED from rendering services, directly or indirectly, to any conflicting organization of the plaintiff in the sale, merchandising or promotion of conflicting products to all customers upon which he called, or whose account he supervised, from May 24, 1987 to May 24, 1989, until May 24, 1991.

■ Turning to the Rutz–Austin agreement, the Court must examine the non-sales provision. Again, the duration of two years is reasonable, as discussed above. However, the scope of the agreement is overbroad. While the sales provision limits its application to those customers that the employee called on or whose account they supervised, the non-sales provision has no limitation and applies to all conflicting organizations with conflicting products, with one exception for diversified businesses. This provision is broader than is necessary to protect Austin and places an unreasonable burden on the defendant.

We hold that a covenant not to compete which imposes unreasonable restrictions upon an employee will be enforced to the extent necessary to protect the employer's legitimate interests. A covenant restraining an employee from competing with his former employer upon termination of employment is reasonable if it is no greater than is required for the protection of the employer, does not impose undue hardship on the employee, and is not injurious to the public. Courts are empowered to modify or amend employment agreements to achieve such results. *Raimonde*, 325 N.E.2d at 547.

As such, this Court is modifying the September 1, 1988 contract between Rutz and Austin to limit its geographical range to that of the West Central Region. This is the area in which Rutz was employed and provided services for the plaintiff. Further, the provision is limited to those customers of Austin's that defendant had contact with during his final two (2) years with Austin. Hence, the defendant is hereby ENJOINED from rendering service, directly or indirectly, to any conflicting organization that he serviced while employed with Austin, except to a conflicting organization whose business is diversified, and which as to part of its business is not a conflicting

organization, provided Austin, prior to Rutz accepting such employment, shall receive separate written assurances satisfactory to Austin from such conflicting organizations and from Rutz that Rutz will not render services directly or indirectly in connection with any conflicting product until May 29, 1991. Since Rutz was employed with Austin less than two (2) years, it is unnecessary to include language limiting the injunction to those customers the defendant serviced during two (2) years prior to his resignation.

Finally, the plaintiff has also requested that this Court enjoin the defendants from violating the nondisclosure provisions. Specifically, Austin is concerned about its pricing, cost and customer list information. The evidence at trial showed that although many of the plaintiff's employees possessed such information, it was not intended to be known by Austin's competitors. As such, Wallwork and Rutz are enjoined from disclosing any confidential information of Austin's, specifically, but not limited to, costs of Austin's products, sales prices of Austin's products and customer information.

Nothing in this Order applies directly against Warex, as Austin and Warex have no contractual relationship upon which the plaintiff can seek an order. However, it does practically affect Warex, as Wallwork and Rutz are the two incorporators of Warex.

IT IS SO ORDERED.

### JUDGMENT AND ORDER

Comes now this matter before the Court upon plaintiff's Complaint for Injunction. Having conducted a trial and all the parties being heard, the Court hereby GRANTS, in part, the plaintiff's request for injunction.

IT IS SO ORDERED.